**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 13-cv-2020

JESSICA MASON,
MICHELLE CROSS,
ALLISON STEBBING,
JAMIE TENCZA, individually and on behalf of all others similarly situated,

      Plaintiffs,

v.

FANTASY, LLC d/b/a FANTASY GENTLEMEN'S CLUB and
KEVIN EARDLEY,

      Defendants.

---

### COMPLAINT & JURY DEMAND

---

    Plaintiffs, Jessica Mason ("Mason"), Michelle Cross ("Cross"), Allison Stebbing ("Stebbing"), and Jamie Tencza ("Tencza"), individually and on behalf of all others similarly situated, by and through their attorneys, Mari Newman, Darold W. Killmer, and Darren M. Jankord, of KILLMER, LANE & NEWMAN, LLP, respectfully allege for their *Complaint & Jury Demand* as follows:

### I.  INTRODUCTION

    1.    This is a case about the exploitation of one of the most vulnerable groups of employees, young women working as dancers in adult entertainment establishments.

    2.    Defendants, Fantasy Gentlemen's Club and its owner, Kevin Eardley, have and continue to unjustly and illegally enrich themselves at these employees' expense, denying the individually named Plaintiffs and other Class members their earned minimum wages, overtime

pay, and the full retention of their tips, charging the Plaintiff dancers fees to work, and arbitrarily subjecting them to various fines.

3.      Defendants' actions in denying Plaintiffs a minimum wage, overtime pay, and the full retention of their earned tips, and requiring Plaintiffs to pay various fees and fines in order to work, have significantly decreased the incomes of these vulnerable workers while unjustly and illegally enriching Defendants.

## II.  JURISDICTION AND VENUE

4.      This action arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), the Colorado Minimum Wage Act (the "CMWA"), Colo. Rev. Stat. § 8-6-101 *et seq.*, and Colorado common law.  This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

5.      This court has supplemental jurisdiction over any and all state law claims pursuant to 28 U.S.C. § 1367.

6.      Venue is proper pursuant to 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in the District of Colorado and a substantial part of the events at issue in this lawsuit took place in the District of Colorado.

## III.  PARTIES

7.      Defendant Fantasy, LLC d/b/a Fantasy Gentlemen's Club ("Fantasy") is an adult entertainment establishment located in Grand Junction, Colorado.

8.      Defendant Kevin Eardley owns and operates Fantasy Gentleman's Club and is involved in its employment decisions and daily operations.  Specifically, Defendant Eardley (1) exercised control over the terms and conditions of Plaintiffs' employment; (2) supervised,

directly and indirectly, the work performed by Plaintiffs; (3) directly and indirectly exercised the right to hire, fire, or modify Plaintiffs' employment conditions; (4) determined Plaintiffs' classification as independent contractors and method of compensation; and (5) decided not to pay Plaintiffs any amount as wages.

9.      Defendant Eardley is a resident of and domiciled in the state of Colorado.

10.     At all times pertinent to this Complaint, Defendants were enterprises engaged in interstate commerce or in the production of goods for consumers as defined § 3(r) and 3(s) of the FLSA, 29 U.S.C. §§ 203(r) and 203(s). The annual gross sales volume of the Defendants was in excess of $500,000 per annum.

11.     The Class that Plaintiffs seek to represent is composed of employees who worked as dancers for Defendants in the state of Colorado.  Defendants intentionally and unlawfully misclassified the members of the Class ("Plaintiff Dancers," "dancers" or "Class members") as independent contractors, failed to pay them a minimum wage and overtime payments, charged them various fees and fines, and otherwise violated their legal rights as set forth herein.

12.     Plaintiff Jessica Mason was, at relevant times, employed as a dancer at Fantasy. Fantasy improperly classified Plaintiff Mason as an independent contractor, failed to pay her a minimum wage or overtime pay, regularly denied her the full wages and tips she had earned, required her to pay various fees and fines in order to be allowed to work, and otherwise violated her legal rights as set forth herein.

13.     Plaintiff Michelle Cross was, at relevant times, employed as a dancer at Fantasy. Fantasy improperly classified Plaintiff Cross as an independent contractor, failed to pay her a minimum wage or overtime pay, regularly denied her the full wages and tips she had earned,

required her to pay various fees and fines in order to be allowed to work, and otherwise violated her legal rights as set forth herein.

14.     Plaintiff Stebbing was, at relevant times, employed as a dancer at Fantasy. Fantasy improperly classified Plaintiff Stebbing as an independent contractor, failed to pay her a minimum wage or overtime pay, regularly denied her the full wages and tips she had earned, required her to pay various fees and fines in order to be allowed to work, and otherwise violated her legal rights as set forth herein.

15.     Plaintiff Tencza was, at relevant times, employed as a dancer at Fantasy.  Fantasy improperly classified Plaintiff Tencza as an independent contractor, failed to pay her a minimum wage or overtime pay, regularly denied her the full wages and tips she had earned, required her to pay various fees and fines in order to be allowed to work, and otherwise violated her legal rights as set forth herein.

## IV.  FACTUAL ALLEGATIONS[1]

### A.  Fantasy Gentlemen's Club Has, and Continues to, Exploit its Vulnerable Workers

16.     Defendant Fantasy is an adult entertainment establishment that caters to male clientele by providing entertainment by female dancers, the Plaintiffs, in various states of undress.

17.     Defendants' business model is predicated entirely on the exploitation of Plaintiffs in order for the company and its owners to earn a profit.

---

[1] While the allegations in this Complaint and Jury Demand are generally written in the past tense, they apply equally to Class Members who are currently employed by Defendants.

18.     Although Plaintiffs were employed by Defendants, Defendants paid them no money for the work they performed.

19.     Instead of paying Plaintiffs for their work, Defendants actually required that Plaintiffs paid *them* before they were allowed to work.

20.     The amounts that Defendants required Plaintiffs to pay before being allowed to work depended on the time their shifts began and the days of the week that they worked.  In order to work the more profitable late night and weekend shifts, Plaintiffs were required to pay a larger fee to Defendants.

21.     Defendants' "House Rates" that Plaintiffs were required to pay in order to work were posted in the dancers' dressing room:

22.     In turn, Defendants used the money paid to them by Plaintiffs in order to fund the operation of the business.

23.     The only compensation received by the Plaintiffs was a portion of the gratuities or "tips" that they were given by customers.

24.     In addition to charging Plaintiffs various fees before allowing them to work, Defendants required that Plaintiffs give a portion of their earned tips to the bouncers, and a portion of their earned tips to the disk jockeys ("DJs").

25.     Defendants' "Dance & House Rules" were posted in the dancers' dressing room, specifying that Plaintiffs must pay the "House Fee" before being allowed to work, specifying the percentage of their tips that Plaintiffs must turn over to the DJs and  bouncers, and various other rules that Plaintiffs had to follow as conditions of their employment:



**Fantasy LLC**
**Dance & House Rules:**
**NO  CONTACT  WITH  PATRONS  AT  ANYTIME !!!**
1. NO touching your breasts, nipples, butt, or vagina.
2. NO simulating masturbation.
3. NO licking your nipples.
4. NO touching other girls breasts, nipples, butt, or vagina.
5. NO touching or crotch diving of any patrons at any time.
6. NO contact with a patrons head and your breasts, nipples, butt, or vagina.
7. NO patron shall touch your breasts, nipples, butt or vagina.
8. NO sitting at stage, and move off stage quickly after your set
9. NO leaving during your shifts
10. NO leaving with a customer or giving out your phone numbers or giving customers a ride home.
11. NO leaving early without checking in with the DJ or MANAGERS.
12. NO cell phones allowed except in dressing room only.
13. MUST pay house fees before you dance.
14. MUST tip out DJ's 7% and Security 7%
15. MUST participate in all birthday and bachelor dances.

*All stages and booths in private lap dance room are recorded under video surveillance, if at any time under review any of these rules are found in violation your lease contract will be void  or you will be fined.
* YOU VIOLATE ANY OF THESE RULES YOUR LEASE IS VOID IMMEDIATELY

26.    Defendants likewise required that Plaintiffs pay *additional* fees in order to dance

in the "Champagne Rooms," as posted in the dancers' dressing room:



27.    Further, Defendants charged Plaintiffs various fines, including fines for trading

shifts with other dancers, cancelling a shift because of illness, leaving early when there is not

enough business, and other arbitrary fines at Defendants' sole discretion.

28.     Some of the fines regularly charged by Defendants to Plaintiffs were posted in

the dancers' dressing room:



THE CLUB IS CHANGING TO A
FIXED SCHEDULE. STARTING
NOV 5TH THE 3 DAYS YOU PICK
TO DANCE WILL STAY THE
SAME EVERY WEEK. IF YOU
MISS A DAY IT MUST BE
COVERED BY ANOTHER
DANCER OR PAY$80, NO
DOCTORS NOTE. IF YOU
COMMIT TO 4 DAYS A WEEK THE
4TH DAY WILL BE HALF PRICE
FOR YOUR HOUSE FEE. IF YOU
CHANGE YOUR SCHEDULE
ONCE IT'S PICKED YOU WILL BE
CHARGED $100. ALSO IF YOU
DON'T HAVE YOUR FEES
UPFRONT YOU WILL BE
CHARGED $30.



29.     The fees, fines, and tips that Defendants required Plaintiffs to pay were unlawful "kick backs."

30.     In addition to funding their operations through the fees and fines demanded of Plaintiffs, Defendants Fantasy and Eardley reaped the benefits of the substantial profits from door charges and drink sales.

31.     Furthering their exploitation, Defendants also failed to pay Plaintiffs overtime wages for weeks during which they worked in excess of forty hours.

**B.  Plaintiffs were Employees of Defendants, not Independent Contractors**

32.     At all relevant times, the Plaintiffs dancers are and were employees of Fantasy Gentlemen's Club under the Fair Standards Labor Act ("FLSA") and the Colorado Labor Code, and were entitled to a minimum wage, receipt of overtime pay, retention of all tips received, and all other benefits regularly conferred upon employees by statute.

33.     At all relevant times, Defendants have been the employers of Plaintiffs.

34.     Defendants intentionally and willfully misclassified Plaintiffs as independent contractors in order to avoid paying them the minimum wage and/or overtime pay required under the FLSA and/or the Colorado Minimum Wage Act.

35.    Defendants also intentionally withheld other statutory rights and benefits, harming Plaintiffs and causing them significant injury and financial loss.

36.    Plaintiffs received no wage payments from Defendants, but instead depended only on gratuities received from customers.

37.    In many instances, Defendants' practices resulted in Plaintiffs earning less than minimum wage, in violation of federal and state law.

38.    Defendants exercised significant control over Plaintiffs.

39.    Defendants dictated Plaintiffs' weekly schedules.

40.    Defendants fined Plaintiffs for tardiness, absence, trading shifts with other dancers, and leaving early, among other real or perceived infractions.

41.    Defendants required Plaintiffs to wear particular types of dress, maintain a certain level of fitness and grooming, and otherwise regulated their physical appearance.

42.    Defendants regulated Plaintiffs' workplace conduct through written guidelines and policies.

43.    Defendants regulated Plaintiffs by specifying the manner in which they danced, including types of movements that were allowed and those that were prohibited.

44.    Defendants regulated Plaintiffs by specifying the manner in which they interacted with customers, specifying types of interaction and conduct that were allowed and others that were prohibited.

45.    Some of Defendants' additional rules regulating Plaintiffs' personal appearance, uniforms, grooming and interactions with customers were posted in the dancers' dressing room:



46.     Defendants further regulated Plaintiffs by fining them for various acts committed by customers and/or by Plaintiffs, at Defendants' sole discretion.

47.     Defendants further regulated Plaintiffs by requiring them to "tip out" the disc jockeys ("DJs") and bouncers.

48.     Defendants required Plaintiffs to pay various fees to dance in VIP "Champagne" rooms, and also set the amount that customers were required to pay for lap dances and use of the VIP room.

49.     Defendants also required Plaintiffs to pay a fee to work any given shift, in varying amounts depending on the night of the week and the time of evening.

50.     Plaintiffs did not have significant control over their opportunity for profit or loss.

51.     Defendants were responsible for attracting customers, advertising, and maintaining food and alcohol availability and pricing.

52.     The investment of Plaintiffs was relatively minor compared to Defendants' considerable investment in operating a nightclub.

53.     Plaintiffs established permanency at Fantasy Gentlemen's Club.

54.     Some Plaintiffs worked at Fantasy Gentlemen's Club for approximately two years on a weekly basis, while others worked intermittently for approximately two years.

55.     Plaintiffs did not exercise the skill required to elevate their status to independent contractors.

56.     Plaintiffs were not selected as dancers based on prior dancing experience, skill, or propensity and received no training or instruction while employed by Fantasy.

57.     Plaintiffs were an integral part of the success of the Defendants' business.

58.     Defendants' business model was dependent on the Plaintiff dancers.

59.     The totality of the circumstances surrounding Plaintiffs' employment relationship with Defendants indicates economic dependence.

**C.  Plaintiffs were Tipped Employees Entitled to Full Retention of All Gratuities**

60.     Plaintiffs were tipped employees who customarily and regularly received more than $30 a month in tips.

61.     Defendants intentionally denied Plaintiffs their due minimum wage as tipped employees.

62.     Plaintiffs were therefore obligated to support themselves exclusively through the tips received from customers for performing exotic stage, table, lap, topless, nude and/or VIP room dances (hereinafter collectively referred to as "dance tips").

63.     Defendants charged customers a set rate for the use of VIP rooms and private rooms and required Plaintiffs to pay fees for the use of such rooms ("room fees").

64.     The dance tips and customer payments for private room performances are tips, not wages or service charges, because the customers directly gave monies to the Plaintiffs in exchange for the dance(s) performed for the customer.

65.     Defendants did not directly receive any monies from customers for the dances performed by Plaintiffs.  Instead, Defendants depended on Plaintiffs to give them the monies received by them.

66.     Defendants treated the dance tips and the payments by customers for private room performances as tips by requiring the dancers to "tip-out" Defendants' bouncers and disc jockeys ("DJs") by paying them between fourteen and fifteen percent of the dance tips and pay for private rooms earned by Plaintiffs.

67.     These are unlawful "kick backs" within the meaning of the FLSA.

68.     The monies given to Plaintiffs by the customers for the dances performed were not entered into Defendants' gross receipts.

69.     Defendants did not issue the members of the Class W-2 forms, 1099 forms, or any other wage-related documents indicating any amounts paid from their gross receipts to Plaintiffs as wages.

70.     Employers may apply a tip credit to offset any minimum wage obligation owed to tipped employees only if the employer has informed the employee of the provision in advance and the employee retains all tips received.

71.     An employer may require employees to pool their tips only when the pool consists of employees who customarily and regularly receive tips.

72.     Defendants never informed any of Plaintiffs of the provision in advance and therefore were prohibited from applying a tip credit to offset Plaintiffs' minimum wage.

73.     Bouncers and DJs are not employees who customarily and regularly receive tips. Defendants' bouncers and DJs received regular paychecks valued at or above the hourly minimum wage.  Therefore, the bouncers and DJs invalidated any tip pool and Plaintiffs were entitled to retain the entirety of the tips received from customers.

74.     Plaintiffs were entitled to the full minimum wage due under the applicable federal and/or Colorado law without any tip credit *and* to retain the full amount of any dance tips and pay for private room performances given to them by customers.

75.     Plaintiffs have suffered financial loss, injury, and damage as a result of Defendants' failure to pay them minimum wages and/or overtime pay, requiring them to pay stage and room fees, requiring them to share a percentage of their tips with the bouncers and

DJs, and fining them for tardiness, absence, trading schedules, and other purported transgressions (in Defendants' sole discretion).

**D.  Defendants Intentionally and Illegally Mistreated Plaintiffs and Willfully Violated the FLSA and the Colorado Labor Code**

76.     All actions by Defendants described herein were willful, intentional, and not the result of negligence or good-faith but incorrect assumptions.

77.     At all relevant times, Defendants knew or recklessly disregarded that the FLSA and Colorado Labor Code applied to Plaintiffs and that under the economic reality test Plaintiffs were obviously employees, not independent contractors, entitled to a minimum wage.

78.     At all relevant times, Defendants knew or recklessly disregarded that Plaintiffs were entitled to one and one half the minimum wage during weeks Plaintiffs worked overtime.

79.     At all relevant times, Defendants knew or recklessly disregarded that Plaintiffs were tipped employees.

80.     At all relevant times, Defendants knew or recklessly disregarded that the bouncers and DJs were not employees who customarily and regularly received tips and that bouncers and DJs invalidated any tip pool.

81.     At all relevant times, Defendants knew or recklessly disregarded that the dance tips and room fees received by Plaintiffs were Plaintiffs' sole property and that the dance tips and room fees were tips, not wages or service charges.

82.     Defendants themselves viewed the dance tips and customers room payments as tips by requiring Plaintiffs to "tip-out" the bouncers and DJs using money earned by Plaintiffs from dance tips and room payments.

83.     At all relevant times, Defendants knew or recklessly disregarded the requirement that they pay Plaintiffs wages finally and unconditionally or "free and clear."

84.     Defendants also willfully failed to meet the wage requirements of the FLSA by requiring Plaintiffs to pay "kick backs" directly or indirectly to Defendants, or to another person for Defendants' benefit, the whole or part of the wage delivered to Plaintiffs.

85.     Defendants refused to issue Plaintiffs any tax documentation regarding their wages and employment, despite requests to do so from Plaintiffs.

86.     Defendants also denied Plaintiffs access to their contracts before and after Plaintiffs left Fantasy Gentlemen's Club.

87.     Defendants' refusal to provide Plaintiffs with copies of their tax records and employment agreements with Defendants is one indication that Defendants were willful in their violation of the FLSA and Colorado Labor Code.

88.     Defendants' willful violation of the law is further evidenced by their refusal to appropriately address Class members' protests of the misclassification and demand for wages and proper classification as employees.

89.     Despite being aware of the FLSA's and the Colorado Labor Code's application to Plaintiffs, Defendants intentionally and willfully chose to misclassify Plaintiffs as independent contractors, to withhold minimum wages, to deny overtime pay, to require Plaintiffs to share their tips with employees who do not customarily and regularly receive tips, to charge Plaintiffs fees in order to work, and to fine Plaintiffs for tardiness, absence, trading schedules with other dancers, and other arbitrary fines excised by Defendants.

### E.  Class Allegations

90.     Plaintiffs bring this action individually and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and 29 U.S.C. § 216(b).

91.     All requirements of Fed.R.Civ.P. 23(a) and (b) are satisfied.

92.     All members of the Class are victims of a single decision, policy, and/or plan designed by Defendants to intentionally deny Plaintiffs' minimum wages and overtime pay, to require Plaintiffs to pay various fees to work, to require Plaintiffs to share a percentage of their tips, and to fine Plaintiffs for various reasons at Defendants' sole discretion.

93.     The members of the Class to be certified against Defendants are defined as follows:

> All individuals, who at any time from the date three years prior to the date this Complaint was originally filed continuing through the present, worked as dancers at Fantasy Gentlemen's Club in Grand Junction, Colorado.

94.     The members of the Class are so numerous that joinder of all members is impracticable.  Although the exact number of potential Class members is currently unknown, on information and belief, the number of dancers who have worked at Fantasy Gentlemen's Club during the relevant time period exceeds 50 women.

95.     There are questions of law and fact common to the Class including whether the Defendants violated the FLSA and/or the Colorado Labor Code by treating Plaintiffs as independent contractors instead of employees, whether Plaintiffs were denied minimum wages and/or overtime pay, whether the monies given to Plaintiffs as dance tips and room fees are tips to which they are solely entitled, whether the bouncers and DJs are employees who customarily and regularly receive tips, whether Defendants fined Plaintiffs for various conduct, whether

Defendants charged Plaintiffs to work, whether Defendants intentionally denied Plaintiffs the full retention of their tips, whether Defendants required Plaintiffs to pay "kick backs" in violation of the FLSA, and whether Defendants were unjustly enriched at the expense of Plaintiffs.

96.     The claims of the named Plaintiffs' claims are typical of the claims of the class because they were not paid a minimum wage or overtime pay, were required to pay in order to work, were required to share their tips, and were fined for workplace conduct just like all other Class members.

97.     The named Plaintiffs will fairly and adequately protect the interests of the Class. The named Plaintiffs, like all Class members, have suffered financial loss, injury, and damage as a result of Defendants' failure to pay their minimum wages and/or overtime pay, requiring them to pay fees in order to work, requiring them to share a percentage of their tips with the bouncers and DJs, and fining them for tardiness, absence, trading schedules, and other workplace conduct.

98.     The named Plaintiffs have no interest that would be adverse to the interests of the Class.

99.     The named Plaintiffs have retained counsel experienced in employment disputes.

100.     This class action is maintainable under Fed.R.Civ.P. 23(b)(1).  The prosecution of separate actions on behalf of individual class members would create the risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.

101.    This class action is maintainable under Fed.R.Civ.P. 23(b)(3).  The questions of law and fact are common to Plaintiffs and predominate over any questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## V.  CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### VIOLATION OF THE FAIR LABOR STANDARDS ACT - 29 U.S.C. 201, *et. seq.*

102.    Plaintiffs hereby incorporate all paragraphs by reference all as if fully set forth herein.

103.    This claim arises from Defendants' willful violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et. seq.*, for failure to pay Plaintiffs a minimum wage and overtime pay to which they were entitled, requiring that they share their tips with DJs and bouncers, and charging Plaintiffs various fees and fines to work.

104.    At all times relevant, Defendants have been, and continue to be, "employers" engaged in commerce, within the meaning of the FLSA 29 U.S.C. § 201, *et. seq.*

105.    At all times relevant, Defendants have employed and continue to employ employees, including Plaintiffs, who engage or engaged in commerce.

106.    At all times relevant, upon information and belief, Defendants have had an annual gross volume of sales made or business done in excess of $500,000.00.

107.    The minimum wage and overtime provisions of the FLSA, 29 U.S.C. § 201, *et. seq.*, apply to Defendants and protect Plaintiffs.

108.    The named Plaintiffs have consented in writing to be a part of this action, pursuant to 29 U.S.C. § 216(b).  Attached as Exhibit A are Plaintiffs' signed consent forms.  As

this case proceeds, it is likely that other individuals will sign consent forms and join as Class Members.

109.    Pursuant to the FLSA, 29 U.S.C. § 206, Plaintiffs and other members of the Class were entitled to be compensated at a rate of $ 7.25 per hour at all times relevant.

110.    Pursuant to the FLSA, 29 U.S.C. § 207, Plaintiffs and other members of the Class were entitled to be compensated at one and one-half the minimum wages for hours they worked over forty hours a week.

111.    Defendants were not allowed to avail themselves of the federal tipped minimum wage rate under the FLSA, 29 U.S.C. § 201, *et. seq*., because Defendants provided no notice to employees of their intention to take a tip credit and because Plaintiffs were not allowed to retain all of their tip money.

112.    Defendants demanded that Plaintiffs pay "kick backs" in the form of fees, tip shares, and fines.

113.    Defendants failed to pay Plaintiffs unconditional wages, as Plaintiffs were required to "kick back" fees, tips, and fines, directly or indirectly to Defendants or to others for Defendants' benefit.

114.    Defendants, pursuant to their policies and practice, refused and failed to pay a minimum wage and/or overtime pay to Plaintiffs.

115.    Defendants, pursuant to their policies and practices, charged Plaintiffs various fees and fines in order to work.

116.    By failing to compensate Plaintiffs, Defendants violated, and continue to violate, Plaintiffs' statutory rights under FLSA, 29 U.S.C. § 201, *et seq*.

117.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. § 255.

118.     The named Plaintiffs, on behalf of themselves and all members of the Class of Plaintiffs, seek damages in the amount of their respective unpaid wages, liquidated damages as provided under the FLSA, 29 U.S.C. § 216(b), interest, and such other legal and equitable relief as the Court deems proper and as set forth herein.

119.     The named Plaintiffs, on behalf of themselves and all members of the Class of Plaintiffs, seek recovery of attorneys' fees and cost to be paid by Defendants as provided by the FLSA, 29 U.S.C. § 216(b).

## SECOND CLAIM FOR RELIEF
### VIOLATION OF THE COLORADO MINIMUM WAGE ACT ("CMWA") – C.R.S. § 8-6-101, *et. seq.*

120.     Plaintiffs hereby incorporate all paragraphs by reference as if fully set forth herein.

121.     This claim arises from Defendants' willful violation of the Colorado Minimum Wage Act, C.R.S. § 8-6-101 *et seq.* as implemented by Colorado Minimum Wage Order Number 29, 7 CCR 1103-1, for failure to pay a minimum wage and overtime pay to Plaintiffs to which they were entitled.

122.     At all times relevant, Defendants have been and continue to be "employers" within the meaning of the CMWA.

123.     At all times relevant, Defendants have employed and continue to employ employees, including Plaintiffs.

124.     The minimum wage and overtime provisions of the Colorado Minimum Wage Act - C.R.S. § 8-6-101, *et. seq.*, apply to Defendants and protect Plaintiffs.

125.     Pursuant to the CMWA, Plaintiffs were entitled to be compensated at a rate of $7.24 per hour from January 1, 2010 to December 31, 2010, $7.36 per hour from January 1, 2011 to December 31, 2011, $7.64 per hour from January 1, 2012 to December 31, 2012, and $7.78 per hour from January 1, 2013 to the present.

126.     Pursuant to the CMWA, Plaintiffs and other members of the Class were entitled to be compensated at one and one-half the minimum wages for hours they worked over forty hours per week.

127.     Defendants provided no notice to the employees of their intention to take a tip credit, and Plaintiffs were not allowed to keep all of their tip money.

128.     Defendants, pursuant to their policies and practices, refused and failed to pay a minimum wage and/or overtime payments to Plaintiffs.

129.     Defendants, pursuant to their policies and practices, charged Plaintiffs various fees and fines in order to work.

130.     By failing to compensate Plaintiffs, Defendants violated, and continue to violate, Plaintiffs' statutory rights under the Colorado Minimum Wage Act.

131.     The foregoing conduct, as alleged, constitutes a willful violation of the CMWA, C.R.S. § 8-4-122.

132.     Plaintiffs, on behalf of themselves and the Class, seek damages in the amount of their respective unpaid wages, interest, and such other legal and equitable relief as the Court deems proper and as set forth herein.

133.    Plaintiffs, on behalf of themselves and the Class, seek recovery of attorneys' fees and costs to be paid by Defendants as provided by the CMWA, C.R.S. § 8-6-118.

### THIRD CLAIM FOR RELIEF
### UNJUST ENRICHMENT

134.    Plaintiffs hereby incorporate all paragraphs by reference as if fully set forth herein.

135.    By refusing to pay Plaintiffs wages for hours worked, including overtime pay, requiring Plaintiffs to share their tips, charging Plaintiffs fees to work, and charging Plaintiffs various fines, including fines for the conduct of customers, Defendants were unjustly enriched at the expense of and to the detriment of Plaintiffs.

136.    Defendants' retention of any benefit collected directly and indirectly violated principles of justice, equity, and good conscience when they refused to pay Plaintiffs' wages, required Plaintiffs to share tips, and charged Plaintiffs unreasonable fines and fees.  As a result, Defendants have been unjustly enriched.

137.    Plaintiffs are entitled to recover from Defendants all amounts that Defendants have wrongfully and improperly obtained, and Defendants should be required to disgorge to Plaintiffs the benefit they have unjustly obtained.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants, and award them all relief allowed by law, including but not limited to the following:

      a.  Issuance of notice pursuant to 29 U.S.C. § 216(b) as soon as possible to all dancers who worked for Defendants during any portion of the three years immediately preceding the filing of this action.  Generally, this notice should inform them that this action has been filed, describe the nature of the action, and

explain their right to opt into this lawsuit without fear of reprisal, retaliation, or abuse by Defendants;

b.   Judgment against Defendants for an amount equal to Plaintiffs' unpaid back wages, overtime pay, fees, fines, shared tips, and all other unlawful kick backs;

c.   Judgment against Defendants that their violations of the FLSA were willful;

d.   Liquidated Damages in amount equal to Plaintiffs' damages pursuant to 29 U.S.C. § 216(b).

e.   Declaratory relief and other appropriate equitable relief, including injunctive relief;

f.   Pre-judgment and post-judgment interest at the highest lawful rate;

g.   Attorneys' fees and costs as allowed by law;

h.   Leave to add additional Plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court; and

i.   Such further relief as justice requires.

**PLAINTIFFS HEREBY DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

DATED this 30th day of July 2013.

KILLMER, LANE & NEWMAN, LLP

*s/ Mari Newman*

_____
Mari Newman
Darold W. Killmer
Darren M. Jankord
1543 Champa St., Ste. 400
Denver, CO  80202
(303) 571-1000

ATTORNEYS FOR PLAINTIFFS