**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Raymond P. Moore**

Civil Action No. 13–cv–02020–RM–KLM

JESSICA MASON,
MICHELLE CROSS,
ALLISON STEBBING,
CIERRA SUTTON,
SIREENA FORTENBERRY,
ANDREA M. CONDE,
RHEA WILSON,
ALLISON HAMEL,
GEORGINA SANTICH,
BRICKELL CLARK,
AIMEE R. TRUMPEY, and
THE ESTATE OF JAMIE TENCZA[1],

      Plaintiffs,

v.

FANTASY, LLC d/b/a FANTASY GENTLEMEN'S CLUB, and
KEVIN EARDLEY,

      Defendants.

---

**ORDER**

---

    This matter is before the Court on Plaintiffs Jessica Mason ("Mason"), Michelle Cross

("Cross"), Allison Stebbing ("Stebbing"), Cierra Sutton ("Sutton"), Sireena Fortenberry

("Fortenberry"), Andrea M. Conde ("Conde"), Rhea Wilson ("Wilson"), Allison Hamel

("Hamel"), Georgina Santich ("Santich"), Brickell Clark ("Clark"), Aimee R. Trumpey

---

[1] Jamie Tencza ("Tencza") was formerly a Plaintiff.  On June 3, 2015, Plaintiffs filed a notice of death pursuant to Fed. R. Civ. P. 25(a).  (ECF No. 92.)  On June 8, 2015, Plaintiffs filed a motion to substitute The Estate of Jamie Tencza as Plaintiff for Tencza.  (ECF No. 93.)  On June 11, 2015, Magistrate Judge Kristen L. Mix granted the motion to substitute The Estate of Jamie Tencza as Plaintiff for Tencza.  (ECF No. 95.)

("Trumpey"), and the Estate of Jamie Tencza's ("Tencza") (collectively, "Plaintiffs" or

"Dancers") motion for summary judgment against Defendants Fantasy, LLC ("Fantasy"), doing

business as Fantasy Gentlemen's Club, and Kevin Eardley ("Eardley") (collectively,

"Defendants") for violating the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et*

*seq.*, and the Colorado Minimum Wage Act ("CMWA"), Colo. Rev. Stat. § 8-6-101 *et seq.*  (ECF

No. 54[2].)  Also before the Court is Plaintiffs' motion for a preliminary injunction.  (ECF No. 79.)

The motion for summary judgment is fully briefed.  (ECF Nos. 60; 63; 76-1.)

     This matter has a complicated procedural history which the Court will attempt to set forth

below.

     For the reasons stated below, the Court GRANTS, in part, and DENIES, in part, Plaintiffs'

motion for summary judgment and DENIES, without prejudice, Plaintiffs' motion for a

preliminary injunction.

## I.    BACKGROUND

### A.    Procedural Background

     On July 30, 2013, Plaintiffs Mason, Cross, Stebbing, Tencza, individually and on behalf of

all others similarly situated, filed suit against Defendants for:  (1) violating the FLSA (ECF No. 1

¶¶ 102-19); (2) violating the CMWA (ECF No. 1 ¶¶ 120-33); and (3) unjust enrichment (ECF No.

1 ¶¶ 134-37).  Thereafter, certain Plaintiffs filed notices of consent to join this matter pursuant to

29 U.S.C. § 216(b).  (ECF Nos. 9; 10; 17; 20; 21; 22; 32; 33.)

---

[2] Plaintiffs also moved for summary judgment as to a retaliation claim that they had sought to add to their Complaint (ECF No. 44).  (ECF No. 54 at 17.)  Subsequent to the filing of the motion for summary judgment (ECF No. 54), the Court denied Plaintiffs' request for leave to amend the Complaint to add a retaliation claim.  (ECF No. 78.) Therefore, Plaintiffs' retaliation claim is not before the Court (*see* ECF No. 63 at 12-13) and the Court will not address it.

On December 3, 2013, Magistrate Judge Mix entered a scheduling order setting January 17, 2014 as the deadline for amendment of pleadings and for joinder of parties.  (ECF No. 25 at 16.)

On June 11, 2014, Magistrate Judge Mix entered an order amending the class-certification date to August 25, 2014.  (ECF No. 43.)  To date, no motion for class certification has been filed.  (*See generally* Dkt.)

On June 27, 2014, certain Plaintiffs filed a motion to amend the Complaint ("First Motion to Amend the Complaint").  (ECF No. 44.)  They sought to amend (1) "the case caption (and statement of the parties) to include all the dancers who [had] joined the lawsuit as named party plaintiffs"; (2) "factual additions based on newly acquired information"; and (3) "the complaint to add legal claims based on Defendants' retaliatory conduct after Plaintiffs filed their initial complaint".  (ECF No. 44 at 2 (emphasis removed).)  Plaintiffs' First Motion to Amend the Complaint stated that "twelve dancers are part of the litigation, four as named Plaintiffs and an additional eight have filed Consents to Join."  (ECF No. 44 at 4.)  On July 18, 2014, Defendants responded to Plaintiffs' First Motion to Amend the Complaint by stating that "Defendants do not oppose amending the Complaint to add the names of additional individuals [who] have executed consents to join since the filing of this action."  (ECF No. 46 at 1.)

On September 17, 2014, Plaintiffs filed the instant motion for summary judgment on their FLSA and CMWA claims.  (ECF No. 54.)  Defendants filed a response (ECF No. 60) and Plaintiffs filed a reply in support of their motion for summary judgment.  (ECF Nos. 63; 64.)

On January 6, 2015, Plaintiffs filed a motion for leave to file a second amended complaint ("Second Motion to Amend the Complaint") to add a claim for fraudulent conveyance.  (ECF No. 71.)

On January 30, 2015, the Court entered an order which granted, in part, and denied, in part, certain Plaintiffs' First Motion to Amend the Complaint.  (ECF No. 78.)  In pertinent part, the Court granted certain Plaintiffs' First Motion to Amend the Complaint to add as named Plaintiffs all persons who have filed the Consent to Join forms.  (ECF No. 78 at 2.)  The Court's order denied certain Plaintiffs' "motion to the extent it seeks to add factual allegations and legal claims."  (ECF No. 78 at 2.)[3]

On February 9, 2015, Plaintiffs filed a motion for a preliminary injunction which seeks, in pertinent part, that the Court enter an order enjoining (1) Eardley and Betty Elaine Lehr ("Lehr") (a non-party to this matter) from further disposing "Fantasy property" and (2) "further disposition by Eardley of other property and assets in his possession."  (ECF No. 79 at 13.)

On February 17, 2015, Eardley filed a notice of automatic stay pursuant to his bankruptcy petition, Case No. 15-11415 in the United States Bankruptcy Court for the District of Colorado ("Bankruptcy Court").  (ECF No. 82.)

On February 19, 2015, Fantasy moved to stay the matter.  (ECF No. 83.)

On February 20, 2015, Magistrate Judge Mix stayed the matter in its entirety but ordered that Fantasy and Plaintiffs should continue to fully brief Fantasy's motion to stay at which point she would determine whether the stay should be lifted as to Fantasy.  (ECF No. 85.)

On March 24, 2015, Fantasy filed a notice of automatic stay pursuant to its bankruptcy petition, Case No. 15-12881 in the Bankruptcy Court.  (ECF No. 87.)

On April 2, 2015, Magistrate Judge Mix, in pertinent part, denied Plaintiffs' Second Motion to Amend the Complaint and denied as moot Fantasy's motion to stay.  (ECF No. 88.)

---

[3] As no amended complaint appears in the docket (*see generally* Dkt.), the Court construes as party Plaintiffs all those who initially filed the Complaint and those who filed notices of consent to join.

On April 21, 2015, certain Plaintiffs[4] filed a motion for relief of the automatic stay against Fantasy in the Bankruptcy Court.  (ECF No. 45 in Case No. 15-12881 (Bankr. Colo.).)  In pertinent part, certain Plaintiffs informed the Bankruptcy Court that they are former "[d]ancers" of Fantasy.  (ECF No. 45 at 1 in Case No. 15-12881 (Bankr. Colo.).)  Further, certain Plaintiffs informed the Bankruptcy Court of the nature of this lawsuit including who are the parties.  (ECF No. 45 at 1-3 in Case No. 15-12881 (Bankr. Colo.).)  On May 5, 2015, Fantasy filed its status report in the Bankruptcy Court and informed the court that "a number of [Fantasy's] former dancers filed suit against [Fantasy] for violations of the FLSA."  (ECF No. 48 at 2 in Case No. 15-12881 (Bankr. Colo.).)  On May 13, 2015, the Bankruptcy Court granted partial relief from the automatic stay to permit "[d]ancers (along with the two additional named plaintiffs in the [d]ancers' [l]awsuit) to proceed with the Dancers' Lawsuit for purposes of fully liquidating their claims against the Debtor."  (ECF No. 53 at 1 in Case No. 15-12881 (Bankr. Colo.).)

Similarly, on April 21, 2015, certain Plaintiffs[5] filed a motion for relief of the automatic stay against Eardley in the Bankruptcy Court.  (ECF No. 27 in Case No. 15-11415 (Bankr. Colo.).)  In pertinent part, certain Plaintiffs informed the Bankruptcy Court that they are former "[d]ancers" of Fantasy.  (ECF No. 27 at 1 in Case No. 15-11415 (Bankr. Colo.).)  Further, certain Plaintiffs informed the Bankruptcy Court of the nature of this lawsuit including who are the parties.  (ECF No. 27at 1-3 in Case No. 15-11415 (Bankr. Colo.).)  On May 12, 2015, the Bankruptcy Court held a hearing on this motion and no objections to or requests for hearing on it were filed with the Bankruptcy Court.  (ECF No. 33 at 1 in Case No. 15-11415 (Bankr. Colo.).)

---

[4] The certain Plaintiffs informed the Bankruptcy Court that "[t]here are a total of twelve named plaintiffs in the Dancers' Lawsuit.  However, one has since died and an estate representative has not yet been appointed.  Another is presently hospitalized and is not represented by the undersigned at this time.  Accordingly, the undersigned represents ten of the twelve named [P]laintiffs."  (ECF No. 45 at 2 n. 1 in Case No. 15-12881 (Bankr. Colo.).)

[5] The certain Plaintiffs informed the Bankruptcy Court that "[t]here are a total of twelve named plaintiffs in the Dancers' Lawsuit.  However, one has since died and an estate representative has not yet been appointed.  Another is presently hospitalized and is not represented by the undersigned at this time.  Accordingly, the undersigned represents ten of the twelve named [P]laintiffs."  (ECF No. 27 at 2 n. 1 in Case No. 15-11415 (Bankr. Colo.).)

On May 13, 2015, the Bankruptcy Court granted partial relief from the automatic stay to permit "[d]ancers (along with the two additional named plaintiffs in the [d]ancers' [l]awsuit) to proceed with the Dancers' Lawsuit for purposes of fully liquidating their claims against the Debtor." (ECF No. 37 at 1 in Case No. 15-11415 (Bankr. Colo.).)

On May 18, 2015, Plaintiffs filed a status report with the Court to inform it of the partial lifting of the automatic stays in Defendants' respective bankruptcy petitions.  (ECF No. 90.) Plaintiffs informed the Court that "any judgment entered by [the] Court against Defendants shall not be the subject of any direct enforcement action against Defendants or Defendants' property, absent further order of the bankruptcy court."  (ECF No. 90 at 2.)  Therefore, Plaintiffs requested that the Court "proceed with adjudicating Plaintiffs' fully briefed [m]otion for [s]ummary [j]udgment."  (ECF No. 90 at 2.)

On May 22, 2015, Magistrate Judge Mix lifted the stays.  (ECF No. 91.)

**B.    Factual Background**

1.    Fantasy Gentlemen's Club

Plaintiffs are former dancers[6] at Fantasy.  (ECF No. 53 at 1 in Case No. 15-12881 (Bankr. Colo.); (ECF No. 37 at 1 in Case No. 15-11415 (Bankr. Colo.); ECF No. 54-4, Cross. Decl. ¶ 4; ECF No. 54-5, Stebbing Decl. ¶ 3.)  Fantasy is an adult entertainment establishment that is engaged in interstate commerce.  (*Compare* ECF No. 1 ¶ 104 *with* ECF No. 19 ¶ 104; ECF No.

---

[6] Plaintiffs only submit the declarations of Plaintiffs Cross and Stebbing which identify that they worked at Fantasy as dancers.  (*See* ECF No. 54-4, Cross Decl. ¶ 4; *see also* ECF No. 54-5, Stebbing Decl. ¶ 3.)  Plaintiffs do not submit any other material in support of their motion for summary judgment to establish that the other Plaintiffs also worked as dancers at Fantasy.  (*See generally* Dkt.)  Therefore, the Court takes judicial notice of the parties' other filings which are germane to identifying Plaintiffs' status as well as the Bankruptcy Court's filings and orders which identify that the other Plaintiffs (except for the Estate of Jamie Tencza but who was herself) were dancers at Fantasy.  *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1171-72 (10th Cir. 1979).  Defendants have not contested this characterization as submitted in Plaintiffs' status report subsequent to the partial lifting of the respective automatic stays against them (ECF No. 90).  (*See generally* Dkt.)

54-2, Eardley Dep. at 104:19-25, 105:1-7.)  Eardley is, and has been since Fantasy's opening, the sole owner and member of Fantasy.  (ECF No. 54-2, Eardley Dep. at 84:23-25, 85:1-6, 93:11-12.)

Fantasy employs several categories of employees including bartenders, disc jockeys (DJs), security guards, and cocktail waitresses.  (ECF No. 54-2, Eardley Dep. 73:8-17.)  Fantasy also employed John Paul Jay ("Jay") as its on-site manager.  (ECF No. 60-2, Jay Dep. 12:23-25, 13:1-6.)  Fantasy pays its bartenders, DJs, security guards, and cocktail waitresses hourly wages and provides them with Internal Revenue Service ("IRS") W-2s.  (ECF No. 54-2, Eardley Dep. 73:18-20, 76:9-14, 79:11-12.)  Eardley sets the hourly wages of Fantasy's bartenders, DJs, security guards, and cocktail waitresses.  (ECF No. 54-2, Eardley Dep. 78:13-24, 79:11-14, 82:9-11.)  Fantasy's primary attraction is its dancers and without them, Fantasy would not be a gentlemen's club.  (ECF No. 54-2, Eardley Dep. 27:9-15, 104:19-23; ECF No. 54-3, Jay Dep. 28:10-12.)  Thus, Fantasy's dancers are integral to its business.  (ECF No. 54-2, Eardley Dep. 105:2-7.)

Fantasy does all of its own advertising.  (ECF No. 54-2, Eardley Dep. 210:13-22.)  Fantasy requires customers to pay a cover charge to enter its club.  (ECF No. 54-2, Eardley Dep. 18:9-20; ECF No. 54-3, Jay Dep. 49:16-24; ECF No. 54-12, Daily Specials.)  Eardley sets all of Fantasy's prices, including the cover charges, stage/house fees, lap dance prices, and drink prices.  (ECF No. 54-2, Eardley Dep. 69:15-25, 70:1-8, 126:3-5.)  Fantasy retains all income it generates from door charges, beverage, and food sales.  (ECF No. 54-8, Independent Contractor Agreement ¶ 2.)  Fantasy incorporates fines paid by dancers into the total stage/house fees it collects for each night.  (ECF No. 54-2, Eardley Dep. 129:22-25, 130:1-4.)

2.      Kevin Eardley's Relation to Fantasy

At all times relevant to this matter, Eardley acted directly or indirectly in the interest of Fantasy in relation to Plaintiffs.  (ECF No. 54-2, Eardley Dep. 93:13-22.)  Eardley has hiring and firing authority over Fantasy's dancers.  (ECF No. 54-2, Eardley Dep. 64:20-22.)  Eardley created all of Fantasy's rules some of which may relate to various laws and/or ordinances.  (ECF No. 54-2, Eardley Dep. 72:12-14, 108:22-25, 109:1-11, 114:7-11, 124:14-25, 125:1, 126:3-5; ECF No. 54-3, Jay Dep. 14:3-8.)  Whether to enforce a rule, fee, or fine on a dancer is in the sole discretion of Eardley and/or the employees to whom Eardley delegated such authority.  (ECF No. 54-2, Eardley Dep. 72:15-19, 125:2-11, 202:18-25, 203:1-3; ECF No. 54-3, Jay Dep. 26:4-20.)  Eardley has a high school diploma.  (ECF No. 60-4, Eardley Dep. 103:21-23.)  Fantasy is the first gentlemen's club Eardley has owned.  (ECF No. 60-4, Eardley Dep. 64:7-9.)  Additionally, Eardley owns the limited liability corporation that owns the property and building on and in which Fantasy operates.  (ECF No. 54-2, Eardley Dep. 209:13-25, 210:1-2; ECF No. 60-4, Eardley Dep. 8:2-18.)

3.      Fantasy's Dancers

Fantasy classifies its dancers as independent contractors.  (ECF No. 54-2, Eardley Dep. 71:4-8; ECF No. 54-4, Cross. Decl. ¶ 5; ECF No. 54-5, Stebbing Decl. ¶ 4; ECF No. 54-7, Eardley Text Messages.)  Based upon speaking with other gentlemen's clubs owners, Eardley determined to treat dancers as independent contractors or as non-employee tenants.  (ECF No. 60-4, Eardley Dep. 215:25, 216:1-6, 219:19-21.)  Prior to dancing at Fantasy, Fantasy requires its dancers to sign an independent contractor agreement.  (ECF No. 54-4, Cross. Decl. ¶ 5; ECF No. 54-5, Stebbing Decl. ¶ 4; ECF No. 54-8, Independent Contractor Agreement.)  Fantasy does not pay dancers any wages.  (ECF No. 54-2, Eardley Dep. 152:22-25, 153:1-8.)  Fantasy's dancers

receive money directly from Fantasy's customers in the form of tips or a portion of fees collected

from customers in "Champagne Rooms." (ECF No. 54-4, Cross Decl. ¶ 4; ECF No. 54-5,

Stebbing Decl. ¶ 3; ECF No. 54-8, Independent Contractor Agreement ¶ 2; ECF No. 54-10,

Champagne Room Rules.) The Independent Contractor Agreement between Fantasy and its

dancers provides that "the rights or benefits afforded to Fantasy's employees, including disability

or unemployment  insurance, workers' compensation, medical insurance, sick leave, or any other

employment benefit" are not available to its dancers. (ECF No. 54-8, Independent Contractor

Agreement ¶ 5; *accord* ECF No. 54-2, Eardley Dep. 153:9-11.) Fantasy does not provide its

dancers with W-2s, 1099s, or other tax documentation. (ECF No. 54-2, Eardley Dep. 73:21-22,

153:12-14.) Stebbing asked Eardley for a W-2 but Eardley refused to provide any tax

documentation. (ECF No. 54-2, Eardley Dep. 198:1-25, 199:1-25, 200:1-25, 201:1-25, 202:1-25,

203:1-21; ECF No. 54-5, Stebbing Decl. ¶ 5; ECF No. 54-7, Eardley Text Messages at 1.)

Eardley intentionally classified Fantasy's dancers, including Plaintiffs, as independent

contractors based on models from other clubs. (ECF No. 54-2, Eardley Dep. 63:17-25, 64:1-6,

70:20-23, 211:23-25, 212:1-16.) At the time during which Eardley made the decision to designate

the dancers as independent contractors, Eardley understood that rules exist regarding the

classification of individuals as "employees" or "independent contractors." (ECF No. 54-2,

Eardley Dep. 212:17-20.) However, Eardley did not familiarize himself with such rules. (ECF

No. 54-2, Eardley Dep. 212:21-25, 213:1.) At the time during which Eardley made the decision

to designate the dancers as independent contractors, Eardley understood that he would be saving

Fantasy money by avoiding employment taxes, minimum wage, workers' compensation, and

other sorts of benefits. (ECF No. 64-1, Eardley Dep. 219:12-25, 220:1-4.) Eardley retains all

responsibility and authority over Fantasy's financial matters.  (ECF No. 54-2, Eardley Dep. 72:20-23, 172:19-22.)

Since Fantasy opened in July 2010, there has been significant turnover among dancers. (ECF No. 60-5, Eardley Decl. ¶ 11.)  Many dancers travel to dance at Fantasy and also dance at other gentlemen's clubs.  (ECF No. 60-4, Eardley Dep. 60:24-25, 61:1-15; ECF No. 60-2, Jay Dep. 105:2-7.)

a.      *Becoming a Dancer at Fantasy*

Fantasy does not require its dancers to have any experience dancing.  (ECF No. 54-2, Eardley Dep. 155:8-10; ECF No. 54-3, Jay Dep. 54:15-17.)  Fantasy's only hiring requirement for dancers is that a dancer perform well at her audition.  (ECF No. 54-2, Eardley Dep. 67:17-20; ECF No. 54-3, Jay Dep. 54:18-21.)  Eardley hired at least one dancer based only on his review of her photos.  (ECF No. 54-4, Cross Decl. ¶ 3.)

b.      *Working as a Dancer at Fantasy*

Fantasy's dancers are not required to do anything to "get customers in the door."  (ECF No. 54-2, Eardley Dep. 210:23-25.)  Fantasy provides its dancers with a stage on which to dance and music to dance.  (ECF No. 54-2, Eardley Dep. 211:3-18.)  The only training Fantasy provides its dancers is "go[ing] over the rules with them on what they can and can't do" and telling them the scheduling requirements.  (ECF No. 54-2, Eardley Dep. 117:12-25, 118:1-14; ECF No. 54-3, Jay Dep. 54:7-14.)

Fantasy has certain rules related to how dancers must act while at Fantasy.  Fantasy fines dancers in an attempt to have them obey its rules.  (ECF No. 54-2, Eardley Dep. 149:3-6.)

(1)     Scheduling

Under threat of monetary fine, although not always enforced, Fantasy's rules require that

dancers work at least three days per week.  (ECF No. 54-2, Eardley Dep. 59:14-18, 61:16-25,

62:1, 128:12-25, 129:1-8, 134:2-5, 143:20-22, 148:1-8; ECF No. 54-3, Jay Dep. 79:6-25, 80:1-24;

ECF No. 54-16, Fixed Schedule Requirement; ECF No. 54-23, Time Scheduling Requirement;

*see* ECF No. 60-3, Pls' Resp. to Defs.' First Set of Written Discovery at 6.)  Although not always

enforced, Fantasy's rules required that if a dancer did not choose her shifts for a week, Fantasy

management would have picked such shifts for the dancers.  (ECF No. 54-2, Eardley Dep.

146:22-25, 147:1-22; ECF No. 54-3, Jay Dep. 103:18-25, 104:1-20.)  At some point, Fantasy

changed its shift rules to a fixed schedule such that the three days the dancers picked would stay

the same every week.  (ECF No. 54-2, Eardley Dep. 128:12-18, 170:1-4; ECF No. 54-3, Jay Dep.

78:18-25, 79:1-5; ECF No. 54-16, Fixed Schedule Requirement.)  Fantasy threatens and fines

dancers who are late for their scheduled shifts at least $10.  (ECF No. 54-2, Eardley Dep. 133:23-

25, 134:1; ECF No. 54-3, Jay Dep. 100:25, 101:1-8; ECF No. 54-21, House Rates.)  Under threat

of monetary fine, Fantasy prohibits dancers from leaving during their scheduled shifts.  (ECF No.

54-2, Eardley Dep. 118:20-24; 120:22-25, 121:1-5; ECF No. 54-11, Fantasy Dance & House

Rules.)  Eardley created the rule which prohibits dancers from leaving early without checking in

with the DJ or Fantasy's managers.  (ECF No. 54-2, Eardley Dep. 121:23-25, 122:1.)

(2)     Dancing and Making Money

Fantasy prohibits dancers from "fraternizing"[7] with Fantasy's customers.  (ECF No. 54-3,

Jay Dep. 67:9-25, 68:1-15; ECF No. 54-11, Fantasy Dance & House Rules.)  Fantasy requires that

dancers use a timer while performing a private dance with a customer.  (ECF No. 54-2, Eardley

Dep. 110:10-12; ECF No. 54-10, Champagne Room Rules.)  Eardley created and implemented

---

[7] Lap and private dances are not viewed as "fraternization."

the rule requiring dancers to use a timer.  (ECF No. 54-2, Eardley Dep. 110:10-12.)  Fantasy requires that dancers check in with the DJ and security before and after performing private dances.  (ECF No. 54-2, Eardley Dep. 110:10-12; ECF No. 54-10, Champagne Room Rules.)  Eardley created the rule requiring dancers to check in with security and the DJ before they began dancing.  (ECF No. 54-2, Eardley Dep. 110:7-9.)  Fantasy prohibits dancers from sitting on stage and requires that the dancers move off stage quickly after their sets.  (ECF No. 54-2, Eardley Dep. 120:4-10; ECF No. 54-3, Jay Dep. 60:15-25, 61:1-2; ECF No. 54-11, Fantasy Dance & House Rules.)  Eardley created and implemented this rule related to dancer's location with respect to the stage.  (ECF No. 54-2, Eardley Dep. 120:4-10.)  Fantasy requires that all dancers participate in all birthday and bachelor dances.  (ECF No. 54-2, Eardley Dep. 124:10-13; ECF No. 54-11, Fantasy Dance & House Rules.)  Eardley created this rule requiring dancers to participate in birthday and bachelor dances.  (ECF No. 54-2, Eardley Dep. 124:10-13.)  Fantasy's rules require that "[d]ancers must have hair, make up, and outfits approved by security before going on stage." (ECF No. 54-2, Eardley Dep. 110:7-9, 135:9-25; ECF No. 54-3, Jay Dep. 93:24-25, 95:1-5; ECF No. 54-19, Outfit Rule.)  Although not always enforced, Fantasy's rules require all dancers to be on the dance floor once their shifts begin.  (ECF No. 54-2, Eardley Dep. 145:19-25, 146:1-15.)  Specifically, under threat of monetary fine, Fantasy's rules require that if a dancer has paid her fees and is ready to work, she needs to be on the floor.  (ECF No. 54-2, Eardley Dep. 146:7-15; ECF No. 54-22, Dressing Room Rule.)  Although not always enforced, Fantasy's rules prohibit dancers from carrying their cell phones with them anywhere within Fantasy except in the dressing room.  (ECF No. 54-2, Eardley Dep. 122:18-22; ECF No. 54-11, Fantasy Dance & House Rules.)  Under threat of a monetary fine, Fantasy prohibits (and Eardley created this rule) dancers from

complaining to customers about their personal lives.  (ECF No. 54-2, Eardley Dep. 138:17-25, 139:1-7; ECF No. 54-19, Outfit Rule.)

(3)     Paying Fantasy

Fantasy has rules related to prices that are charged to patrons and fees that its dancers must pay to it for performing certain services.  Fantasy charges dancers varying "stage" or "house" fees to dance each night which range from $30 to $80.  (ECF No. 54-2, Eardley Dep. 134:2-12; ECF No. 54-3, Jay Dep. 101:19-22; ECF No. 54-4, Cross Decl. ¶¶ 8, 18; ECF No. 54-5, Stebbing Decl. ¶¶ 7, 13; ECF No. 54-14, Fantasy Dance & House Rules; ECF No. 54-21, House Rates.)   Under threat of monetary fine and created by Eardley, Fantasy's rules require that dancers pay "house fees before [they] dance."  (ECF No. 54-2, Eardley Dep. 127:7-19, 129:22-25; ECF No. 54-3, Jay Dep. 70:9-22, 82:11-21, 96:1-17; ECF No. 54-11, Fantasy Dance & House Rules.)  Although not always enforced, under threat of monetary fine, Fantasy's rules require that dancers "tip" the DJ and security a specified amount of their earnings.  (ECF No. 54-2, Eardley Dep. 23:1-25, 24:1-18, 124:6-9; ECF No. 54-3, Jay Dep. 75:18-25, 76:1-10; ECF No. 54-21, House Rates.)  Eardley created and enforced this "tip" rule.  (ECF No. 54-2, Eardley Dep. 78:25, 79:1-3, 79:15-17, 124:6-9; ECF No. 54-4, Jay Dep. 146:1-11.)  Specifically, Plaintiffs Cross and Stebbing abided by Fantasy's "tip" rule.  (ECF No. 54-4, Cross Decl. ¶ 15; ECF No. 54-5, Stebbing Decl. ¶ 10; *see* ECF No. 54-21, House Rates.)  Under threat of monetary fine, Fantasy's rules require dancers to pay back to Fantasy a set amount from their private dance fees.  (ECF No. 54-2, Eardley Dep. 31:8-25, 32:1-5, 109:20-23, 142:2-6; ECF No. 54-10, Champagne Room Rules.)  Under threat of increased house fees, Fantasy's rules prohibit dancers from setting their own prices for lap and private dances or asking for tips.  (ECF No. 54-2, Eardley Dep. 140:8-25, 141:4-7; ECF No. 54-3, Jay Dep. 96:18-25, 97:1-25; ECF No. 54-20, Lap & Private Dance Rules.)  Fantasy tracks dancers

in the private rooms and knows whether they violate the payout rules by monitoring security

cameras.  (ECF No. 54-2, Eardley Dep. 114:7-17.)

(4)     Rules Related to Liquor and Prostitution

Unlike some of the rules that Fantasy imposes on its dancers (ECF No. 54-2, Eardley Dep.

109:12-25, 110:1-16, 112:2-19, 120:4-10, 125:12-21), Fantasy has other rules which relate to

liquor or prostitution laws.  Specifically, Fantasy prohibits certain physical contact with patrons.

(ECF No. 54-2, Eardley Dep. 110:3-6, 111:11-25, 112:1-25, 115:13-25, 116:1-25, 117:1-25; ECF

No. 54-11, Fantasy Dance & House Rules.)  Fantasy prohibits dancers from touching certain body

parts of themselves and others.  (ECF No. 54-2, Eardley Dep. 111:11-25, 112:1-25, 115:13-25,

116:1-25, 117:1-25; ECF No. 54-3, Jay Dep. 52:20-25, 53:1-7, 88:8-25, 89:1-3; ECF No. 54-11,

Fantasy Dance & House Rules.)  Fantasy threatens and fines dancers or increases their

stage/house fees if a dancer brings or permits customers to bring alcohol into the private dance

rooms.  (ECF No. 54-2, Eardley Dep. 132:13-25, 133:1-14; ECF No. 54-3, Jay Dep. 26:21-25,

27:1-12; ECF No. 54-18, Alcohol Rule.)  Further, the liquor code permits dancers to wear only

certain types of clothing.  (ECF No. 60-4, Eardley Dep. 214:11-15.)

## II.     LEGAL STANDARDS

### A.     Summary Judgment

Summary judgment is appropriate only if there is no genuine dispute of material fact and

the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem. Coal Co., Inc.,* 41 F.3d 567, 569-

70 (10th Cir. 1994).  "A party seeking summary judgment bears the initial responsibility of

informing the district court of the basis for its motion . . . ."  *Robertson v. Bd. of Cty. Comm'rs of*

*the Cty. of Morgan*, 78 F. Supp. 2d 1142, 1146 (D. Colo. 1999) (citation omitted).  Whether there

is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one–sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000). Once the moving party meets its initial burden of demonstrating an absence of a genuine dispute of material fact, the burden then shifts to the non-moving party to move beyond the pleadings and to designate evidence which demonstrates the existence of a genuine dispute of material fact to be resolved at trial. *See 1-800-Contacts, Inc. v. Lens.com, Inc.,* 722 F.3d 1229, 1242 (10th Cir. 2013) (citation omitted). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson*, 477 U.S. at 248. In considering whether summary judgment is appropriate, the facts must be considered in a light most favorable to the non-moving party. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013) (citations omitted).

If a movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) (holding that "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact") (citation omitted).

The content of evidence must be admissible to be considered when ruling on a motion for summary judgment. *Adams v. Am. Guarantee & Liability Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000); *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1314 (10th Cir. 2005) (citation omitted) (holding that hearsay evidence is not acceptable in opposing a summary judgment

motion); *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

Affidavits must be based on personal knowledge and must set forth facts that would be admissible

evidence at trial. *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995) (quotations and

citation omitted). "Conclusory and self-serving affidavits are not sufficient." *Id.* The Court will

not consider statements of fact, or rebuttals thereto, which are not material or are not supported by

competent evidence. Fed. R. Civ. P. 56(c)(1)(A), 56(e)(2), 56(e)(3). "[O]n a motion for summary

judgment, it is the responding party's burden to ensure that the factual dispute is portrayed with

particularity, without depending on the trial court to conduct its own search of the record." *Cross

v. The Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004) (internal quotation and citation

omitted). The Court is "not obligated to comb the record in order to make [a party's] arguments

for [it]." *See Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1199 (10th Cir. 2000). Further,

Local Rule 7.1(e) provides that "[e]very citation in a motion, response or reply shall include the

specific page or statutory subsection to which reference is made." D.C. Colo. L. Civ. R. 7.1(e).

"In order to survive summary judgment, the content of the evidence that the nonmoving

party points to must be *admissible*." *Adams*, 233 F.3d at 1246 (alteration in original and citation

omitted). "The nonmoving party does not have to produce evidence in a form that would be

admissible at trial, but '"the content or substance of the evidence must be admissible."'" *Adams*,

233 F.3d at 1246 (citation omitted). "Evidence presented must be based on more than 'mere

speculation, conjecture, or surmise' to defeat a motion for summary judgment." *Southway v.

Cent. Bank of Nigeria*, 149 F. Supp. 2d 1268, 1274 (citations omitted). "Rule 56 expressly

prescribes that a summary judgment affidavit must 'be made on personal knowledge, set forth

facts that would be admissible in evidence, and show that the affiant is competent to testify on the

matters stated.'" *Johnson v. Weld Cty., Colo.*, 594 F.3d 1202, 1210 (10th Cir. 2010) (citation

omitted); *accord* Fed. R. Civ. P. 56(c)(4).  "If a party fails to properly support an assertion of fact

or fails to properly address another party's assertion of fact . . ., the court may:  (1) give an

opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes

of the motion; (3) grant summary judgment if the motion and supporting materials—including the

facts considered undisputed—show that the movant is entitled to it; or (4) issue any other

appropriate order."  Fed. R. Civ. P. 56(e).

### B.      Determining Whether a Worker is an Employee under the FLSA

The FLSA states that "[e]very employer shall pay to each of his employees who in any

workweek is engaged in commerce . . . or is employed in an enterprise engaged in commerce . . .

wages at $7.25 an hour. . . ."  29 U.S.C. § 206(a).  The FLSA defines "employer" as "any person

acting directly or indirectly in the interest of an employer in relation to an employee," and

"commerce" means "trade, commerce, transportation, transmission, or communication among the

several States or between any State and any place outside thereof."  *Id*. at § 203(b), (d).  The

FLSA defines "employee" as, with enumerated exceptions not pertinent to this matter, "any

individual employed by an employer."  *Id*. at § 203(e)(1).  The definition is necessarily a broad

one in accordance with the remedial purpose of the FLSA.  *See United States v. Rosenwasser*, 323

U.S. 360, 363 (1945).  The FLSA defines "to employ" as "to suffer or permit to work."  *Id*. at §

203(g).  The FLSA fails to define what it means "to suffer or permit to work."  *Norton v.

Worthern Van Serv., Inc.*, 839 F.2d 653, 654 (10th Cir. 1988).  To determine whether an

individual is an employee under the FLSA, courts look to the six-factor "economic realities test":

"(1) the degree of control exerted by the alleged employer over the worker; (2) the worker's

opportunity for profit or loss; (3) the worker's investment in the business; (4) the permanence of

the working relationship; (5) the degree of skill required to perform the work; and (6) the extent to

which the work is an integral part of the alleged employer's business." *Baker v. Flint Eng'g &*
*Constr. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998) (citation omitted).

### C.      Determining Whether a Worker is an Employee under the CMWA

The CMWA allows an employee "to sue his or her former employer for earned wages and
other compensation the employer has refused to pay." *Lester v. Career Bld. Acad.*, 338 P.3d
1054, 1058 (Colo. App. 2014); *see also* Colo. Rev. Stat. § 8-4-109.  The CMWA defines
"employer" as "every person, firm, partnership, association, corporation, . . . and any agent or
officer thereof, of the above mentioned classes, employing any person in Colorado. . . ."  Colo.
Rev. Stat. § 8-4-101(6).  The CMWA defines "employee" as "any person . . . performing labor or
services for the benefit of an employer in which the employer may command when, where, and
how much labor or services shall be performed.  For the purpose of [the CMWA], an individual
primarily free from control and direction in the performance of the service, both under his or her
contract for the performance of service and in fact, and who is customarily engaged in an
independent trade, occupation, profession, or business related to the service performed is not an
'employee.'"  Colo. Rev. Stat. § 8-4-101(5).

### D.      Whether to Issue a Preliminary Injunction

Before a preliminary injunction may be issued, the moving party must establish: (1) it will
suffer irreparable injury unless the injunction issues, (2) the threatened injury outweighs any
damage the proposed injunction may cause the opposing party, (3) if issued, the injunction would
not be adverse to the public interest, and (4) it has a substantial likelihood of success on the
merits.  Fed. R. Civ. P. 65(a); *Wilderness Workshop v. United States Bureau of Land Mgmt.*, 531
F.3d 1220, 1224 (10th Cir. 2008) (citation omitted).  "Because a preliminary injunction is an

extraordinary remedy, the right to relief must be clear and unequivocal." *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003) (citation omitted).

## III.   ANALYSIS

### A.   Motion for Summary Judgment on Plaintiffs' Wage Claims

First, Defendants' failure to pay wages, if there exists an employment relationship as defined respectively under the FLSA and the CMWA, violates the respective wage acts.  29 U.S.C. § 206(a); Colo. Rev. Stat. § 8-4-109.

Second, both the FLSA and CMWA define "employer" broadly to include both individual persons and corporations if certain other requirements are met.  *See* 29 U.S.C. § 203(d); *see also* Colo. Rev. Stat. § 8-4-101(6).  Under the FLSA, the Court will determine whether both Defendants, under the economic realities test, were employers in relation to Plaintiffs.  More than one "employer" may be liable for FLSA violations.  *Thompson v. Linda & A., Inc.*, 779 F. Supp. 2d 139, 152 (D.D.C. 2011) (citation omitted); *Robertson v. Bd. of Cty. Comm'rs of Cty. of Morgan*, 78 F. Supp. 2d 1142, 1150 (D. Colo. 1999) (citations omitted).  Under the CMWA, the Court will determine whether both Defendants, under the statutory definitions, were employers in relation to Plaintiffs.  More than one "employer" may be liable for CMWA violations.  *See Cagle v. Mathers Family Trust*, 295 P.3d 460, 469 (Colo. 2013) (holding that the CMWA is "designed to require *employers* to make timely payment of wages . . . and to provide adequate judicial relief when *employers* fail to pay wages when due") (internal quotation and citation omitted; emphasis added); *see also Leonard v. McMorris*, 63 P.3d 323, 330 (Colo. 2003) (holding that a corporate officer is not the employer responsible for creating an employment relationship and is not personally responsible for a breach of that relationship unless he or she created the relationship without disclosing the responsible principal corporation to which he or she answered as an agent).

In this matter, Eardley is the sole owner and member of Fantasy.  Eardley acted directly or indirectly in the interest of Fantasy in relation to Plaintiffs.  Eardley has hiring and firing authority over Fantasy's dancers.  Eardley created all of Fantasy's rules some of which may relate to various laws and/or ordinances.  Whether to enforce a rule, fee, or fine on a dancer is in the sole discretion of Eardley and/or the employees to whom Eardley delegated such authority.  Eardley intentionally classified Fantasy's dancers, including Plaintiffs, as independent contractors based on models from other clubs.  Eardley retains all responsibility and authority over Fantasy's financial matters.

Therefore, if the Court determines the Dancers to be "employees" under the respective laws, Eardley and Fantasy are both "employers" under the respective wage acts.

For the following reasons and those stated above, the Court holds that Defendants violated the FLSA by failing to pay Plaintiffs a minimum wage.  There exists a disputed material fact appropriate for a jury to determine whether this violation was willful.  For the following reasons and those stated above, the Court holds that disputed material facts preclude a finding that Defendants violated the CMWA by failing to pay Plaintiffs a minimum wage.

## 1.    The FLSA Claim

The parties agree that, under the FLSA, the "economic realities test" determines whether Fantasy employed Plaintiffs.  (ECF No. 54 at 5; ECF No. 60 at 4.)  Although there are various factors associated with the economic realities test, the test is based on a totality of the circumstances.  *Johnson v. Unifid Gov't of Wyandotte Cnty./Kansas City, Kan.*, 371 F.3d 723, 729 (10th Cir. 2004) (citation omitted).  Whether an entity is an employer within the meaning of the FLSA is a legal question, with subsidiary findings considered issues of fact.  *Patel v. Wargo*, 803 F.2d 632, 634 (11th Cir. 1986.)

The Court notes that several courts have addressed the question of whether an exotic dancer is an employee under the FLSA and many have found an employment relationship and required the gentlemen's club to pay its dancers a minimum wage. *Clincy v. Galardi S. Enters., Inc.*, 808 F. Supp. 2d 1326, 1343 (N.D.Ga. 2011) (collecting cases). Nevertheless, the Court examines the economic realities of the relationship between the dancers and Defendants at issue in this matter.

a. *The Economic-Realities Test*

(1)    The Degree of Control Exercised by Defendants

Plaintiffs contend that Fantasy controls its dancers through "(1) written rules, (2) scheduling, (3) mandatory house fees, (4) appearance requirements, (5) mandatory tip-outs, and (6) monetary fines." (ECF No. 54 at 6.) Defendants respond that Fantasy did not regulate the dancers "beyond what is calculated to ensure compliance with criminal and liquor laws." (ECF No. 60 at 6.) The Court agrees with Defendants that, where Defendants implemented rules to assure compliance with applicable laws and ordinances, those rules are not evidence of Defendants' control over its dancers. *See Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 916 (S.D.NY 2013) (citation omitted). There is no material factual dispute that the vast majority, however, of Fantasy's rules had nothing whatsoever to do with safety concerns[8] or compliance with law.

As an initial matter, Defendants contend that many of its rules were not enforced. (ECF No. 60 at 8.) That is not dispositive of the issue. Of primary importance in determining whether Defendants exercised control is whether Defendants had the ability to enforce such rules. *Hart*, 967 F. Supp. 2d at 918 (finding the mere threat of imposing fines to ensure dance compliance with the club's rules indicative of a high degree of control); *Clincy*, 808 F. Supp. 2d at 1345

_____

[8] Defendants fail to identify any rules which were implemented to ensure the dancers' safety.

(finding that the club had control over dancers when it had authority to fine dancers for violations of club rules but did not do so consistently or uniformly); *Thompson*, 779 F. Supp. 2d at 148 (finding that the ability to punish dancers for club rule violations through fines is indicative of a club's control even when violations did not result in fines or fines were uncollected).  Here, there is no disputed material fact that Defendants had the authority to fine Dancers for violating Fantasy's rules and implemented the threat of monetary fines in order to bring dancers into compliance with its rules.

Upon a dancer's hiring, they are instructed as Fantasy's rules.  These rules cover, among other things:  scheduling; dancing on and off stage; and paying Fantasy.  Defendants fail to show that all of these rules are related to state laws or local ordinances.  With respect to scheduling, for example, Defendants concede they required Plaintiffs to appear on the nights for which that had agreed to work.  (ECF No. 60 at 8.)  When Plaintiffs worked, they were subject to Defendants' rules which prohibited them from arriving late or leaving during their scheduled shifts.  A club's control over when dancers work and related scheduling requirements indicates control and employee status.  *See*, *e.g.*, *Clincy*, 808 F. Supp. 2d at 1344-45.  With respect to dancing on and off stage, Defendants argue that "Fantasy did not tell Plaintiffs how to dance or even in what style to dance, and place no restrictions on what moves they could perform, other than as necessary to comply with legal restrictions (e.g., no actual or simulated stimulation of genitals)."  (ECF No. 60 at 6.)  Defendants, however, for example, required that the dancers use a timer while performing a private dance with a customer.  Further, Fantasy requires that all dancers participate in all birthday and bachelor parties.  And Fantasy has a rule that requires that all dancers' hair, make up, and outfits be approved by security.  With respect to paying Fantasy, Defendants do not respond other than to say that most of the fines were not collected.  (*See generally* ECF No. 60.)  In contrast,

Plaintiffs contend, with undisputed material facts, that Defendants required its dancers to pay house or stage fees before each shift and additional set fees for providing dances in the private dance rooms.

The Court finds that, based upon the totality of the undisputed material facts, Defendants exercise a significant amount of control over the dancers, and that this factor weighs in favor of finding an employer-employee relationship under the FLSA.

(2)     The Dancers' Opportunity for Profit or Loss

Plaintiffs contend that because Defendants control the factors related to customer volume and spending, Defendants also control Plaintiffs' opportunity for profit or loss.  (ECF No. 54 at 11.)  Defendants counter that Plaintiffs are providing a service to a patron and are responsible for generating their own business.  (ECF No. 60 at 9.)

In this matter, Defendants are primarily responsible for attracting customers to Fantasy, as decisions for promotions, alcohol availability and pricing, pricing for lap dances, and pricing for club entrance are Defendants.  Thus, Defendants, in effect, influence customer volume for themselves and those potentially for the dancers.  Further, the risk of loss is greater for Defendants than Plaintiffs.  As Plaintiffs only risk their house fees, costumes' cost, and time for each shift they work, Defendants bear a greater loss as they bear the loss of beverages and capital outlay including the property and the building.

Thus, the Court finds that the second factor weighs in favor of finding an employer-employee relationship, under the FLSA, between Defendants and Plaintiffs.  *See Clincy*, 808 F. Supp. 2d at 1346.

(3)     Relative Investments of Defendants and the Dancers

Defendants concede that Plaintiffs' investment in comparison to theirs is *de minimis*. (ECF No. 60 at 9.)  Therefore, the Court finds that the third factor weighs in favor of finding an employer-employee relationship, under the FLSA, between Defendants and Plaintiffs.

(4)     The Degree of Skill

Defendants do not require that dancers have any experience prior to dancing at Fantasy. Hiring is based upon an audition and one dancer has been hired based upon photos alone. Defendants do not argue that dancing is skilled work.  (*See generally* ECF No. 60.)

Courts have held that there is little to no skill required to be a nude dancer.  *See, e.g.*, *Clincy*, 808 F. Supp. 2d at 1347-48; *Thompson*, 779 F. Supp. 2d at 150.  Based upon the facts before the Court, the Court is of the opinion that dancing at Fantasy does not involve skilled work.

Therefore, the Court finds that the fourth factor weighs in favor of finding an employer-employee relationship, under the FLSA, between Defendants and Plaintiffs.

(5)     The Permanency and Duration of the Employment
         Relationship

There exists significant turnover among dancers at Fantasy.  Further, the independent contractor agreement does not have a pre-specified duration.  But the Court gives this factor, based upon the profession at issue in this matter, only limited weight in comparison with the other factors considered under the economic realities test.  *Hart*, 967 F. Supp. 2d at 921 (citations omitted).

Therefore, the Court finds that the fifth factor weighs against finding an employer-employee relationship, under the FLSA, between Defendants and Plaintiffs.

(6)     The Extent to which Dancers were Integral to Fantasy

Defendants concede that dancers are integral to its business.  (*See generally* ECF No. 60.)

The Court finds that the sixth factor weighs in favor of finding an employer-employee

relationship, under the FLSA, between Defendants and Plaintiffs.

(7)     Consideration of All Factors

Considering the preceding factors in combination—even resolving all disputed factors in

Defendants' favor—the Court comfortably concludes as a matter of economic reality that the

dancers at Fantasy were employees, not independent contractors, under the FLSA.  Defendants

exerted significant control over their dancers' behavior; Defendants had the dominant opportunity

for profit and loss; the dancers had no specialized skills; and the dancers were integral to

Fantasy's success.  Measured against these factors, the transient and non-exclusive nature of the

dancers' employment is insufficient to remove them from the FLSA's reach.

b.     *Willfulness and Good Faith*

An employer willfully violates the FLSA, 29 U.S.C. § 255(a), when it "knew or showed

reckless disregard for the matter of whether its conduct was prohibited by the FLSA."  *Pabst v.

Okl. Gas & Elec. Co.*, 228 F.3d 1128, 1137 (10th Cir. 2000) (internal quotation and citation

omitted).  The Tenth Circuit cautions that "whether an FLSA violation is willful is a mixed

question of law and fact, but [that the Tenth Circuit] believe[s] the factual issues predominate. . .

."  *Id.* (citation omitted).  An employee can show willfulness based on "the employer's diligence

in the face of a statutory obligation, not on the employer's mere knowledge of the relevant law."

*Mumby v. Pure Energy Servs. (USA), Inc.*, 636 F.3d 1266, 1270 (10th Cir. 2011) (citation

omitted).  The "standard for proving willfulness is high."  *Hart*, 967 F. Supp. 2d at 937.

In this matter, the undisputed material facts show that at the time Eardley made the decision to designate the dancers as independent contractors, Eardley understood that rules exist regarding the classification of *individuals* as "employees" or independent contractors." To a limited extent Eardley familiarized himself with the applicable rules and laws. Eardley made the decision to designate the dancers as independent contractors based upon only speaking with gentlemen's clubs' owners. Eardley knew that by designating the dancers as independent contractors he would save Fantasy money by avoiding employment taxes, minimum wage, workers' compensation, and other sorts of employment benefits. Eardley, in contrast, afforded these employment benefits to Fantasy's bartenders, DJs, security guards, and cocktail waitresses.

Defendants' reliance upon *Hart*, 967 F. Supp. 2d at 937-38, is misplaced. First, *Hart* is not controlling on the Court. Second, the Court disagrees with *Hart's* characterization of "reckless disregard" as "actual knowledge of a legal requirement, and deliberate disregard of the risk that one is in violation." *See Hart*, 967 F. Supp. 2d at 937-38. In contrast, the Tenth Circuit, as described previously, distinguishes between actual knowledge and deliberate disregard. *Pabst*, 228 F.3d at 1137. And an employee can show reckless disregard through "action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id*. (citation omitted.) The Court's "operative inquiry focuses on the employer's diligence in the face of a statutory obligation, not on the employer's mere knowledge of relevant law." *Id*. Inversely, failure to consult with a lawyer is insufficient to prove recklessness. *Id*. (citation omitted).

In this matter, Eardley sought the discrete advice from other gentlemen's clubs' owners as to how to classify his dancers. Plaintiffs, however, fail to show that Eardley did not similarly receive and rely upon the advice of the other gentlemen's clubs' owners as the reason for his decision to designate Fantasy's bartenders, DJs, security guards, and cocktail waitresses as hourly

employees.  Although an employer may not selectively listen to and then, in good faith, rely upon

only a piece of advice, Plaintiffs fail to show that this is what occurred in this matter.  Plaintiffs

fail to show from where Eardley gained his knowledge as to how to classify Fantasy's other

employees.  (*See generally* ECF Nos. 54; 63.)

Based upon these facts, the Court cannot conclude as a matter of law, that Defendants

willfully violated the FLSA.  Therefore, whether Defendants willfully violated the FLSA is a

matter for trial.

2.      The CMWA Claim

Plaintiffs argue that "[s]imilarly [to the FLSA], the C[M]WA 'creates a presumption that

one who performs services for another is an employee.'"  (ECF No. 54 at 5 (quoting *Carpet Exch.*

*of Den., Inc. v. Indus. Claim Appeals Ofc.*, 859 P.2d 278, 281 (Colo. App. 1993)).)

First, Plaintiffs fail to demonstrate that as a matter of law, the CMWA defines employee

similarly to how the FLSA defines employee.  (*See generally* ECF Nos. 54; 63.)  Second,

Plaintiffs fail to demonstrate that courts' interpreting the respective wage acts use the same

analysis.  (*See generally* ECF Nos. 54; 63.)  Third, the cases upon which Plaintiffs rely (ECF No.

54 at 5), *Carpet Exch. of Den., Inc. v. Indus. Claim Appeals Office.*, 859 P.2d 278, 281 (Colo.

App. 1993) and *Speedy Messenger Delivery Serv. v. Indus. Claims Appeals Office*, 129 P.3d 1094,

1096 (Colo. App. 2005), are inapposite as neither concerns the definition of employee under the

CMWA.  Both of those cases, rather, involve Colorado's definition of employment under the

Federal Unemployment Tax Act, Colo. Rev. Stat. § 8-70-115.  Fourth, both of the cases upon

which Plaintiffs rely have been abrogated, in pertinent part, as to how Plaintiffs rely upon them,

by *Indus. Claim Appeals Office v. Softrock Geological Servs., Inc.*, 325 P.3d 560, 565-66 (Colo.

2014) (holding that whether an individual is engaged in an independent business for purposes of

Colo. Rev. Stat. § 8-70-115, is to be resolved by "applying a totality of the circumstances test that evaluates the dynamics of the relationship between the putative employee and the employer; there is no dispositive single factor or set of factors").

Further, the Court notes that the CMWA defines "employee" in reference to facts that are not before the Court. Colo. Rev. Stat. § 8-4-101(5). Specifically, the Court is unable to discern whether, as defined by the CMWA, the dancers are (1) *primarily* free from control and direction in the performance of their services; and (2) *customarily* engaged in an independent trade, occupation, profession, or business related to the service performed. Colo. Rev. Stat. § 8-4-101(5). The CMWA does not define primarily and customarily. Plaintiffs provide no supporting facts to establish that they are entitled to judgment as a matter of law under the CMWA with respect to these qualifying terms.

For these reasons, the Court denies Plaintiffs' motion for summary judgment on their CMWA claim.

**B.      Motion for Preliminary Injunction**

The Bankruptcy Court's respective orders provide that "[a]ny judgment which may be entered against [Defendants] shall not be the subject of any direct enforcement action against [Defendants] or property of [Defendants], absent further [o]rder of [the Bankruptcy Court]." (ECF No. 37 at 2 in Case No. 15-11415 (Bankr. Colo.); ECF No. 53 at 2 in Case No. 15-12881 (Bankr. Colo.).) The Court, pursuant to the automatic stay provisions, is unable to take action against Defendants' property which is the relief sought in the motion for a preliminary injunction (ECF No. 79 at 13).

For this reason, the Court denies, without prejudice, Plaintiffs' motion for a preliminary injunction.

## IV.   CONCLUSION

Based on the foregoing, the Court:

(1)   GRANTS, in part, and DENIES, in part, Plaintiffs' motion for summary judgment[9] (ECF No. 54), to wit, the Court:

(i)   GRANTS Plaintiffs' motion for summary judgment on their FLSA claim (ECF No. 1 ¶¶ 102-19) against Defendants Fantasy and Eardley to the extent their claims are based upon a two year statute of limitations, *see* 29 U.S.C. § 255(a), and whether the Defendants' willfully violated the statute is to be determined at trial;

(ii)   DENIES Plaintiffs' motion for summary judgment on their CMWA claim (ECF No. 1 ¶¶ 120-33) against Defendants Fantasy and Eardley, and whether Defendants' violated the statute is to be determined at trial;

(2)   DENIES, without prejudice, Plaintiffs' motion for preliminary injunctive relief (ECF No. 79); and

(3)   ORDERS the parties to file a joint-status report on or before August 10, 2015, as to how the parties wish to proceed.

DATED this 27th day of July, 2015.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge

---

[9] The Court notes that these claims give rise to similar and, at least partially, overlapping damages. Although Plaintiffs are entitled to bring claims under both the FLSA and CMWA, at trial, they may recover damages only on the statute which provides the greatest relief. *Evans v. Loveland Automotive Invs., Inc.*, Case No. 13-cv-2415-WJM-KMT, 2015 WL 161295, at *5 (D. Colo. Jan. 13, 2015) (citations omitted).